*127-15*

NO. 05-12-01413-CR

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS AT AUSTIN, TEXAS

ERIK JACKSON - PETITIONER

vs.

STATE OF TEXAS - APPELLEE

PETITION FOR DISCRETIONARY REVIEW

FROM THE 5th COURT OF APPEALS AT
DALLAS, TEXAS.
ON APPEAL FROM CRIMINAL DISTRICT
COURT NO. 1, OF DALLAS COUNTY, TX.
IN CAUSE NO. F11-63319-H

ORIGINAL

FILED IN
COURT OF CRIMINAL APPEALS

MAR 27 2015

Abel Acosta, Clerk

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 26 2015

Abel Acosta, Clerk

Erik Jackson - Pro se
TDCJ. NO. 1816262
Ferguson Unit
12120 Savage Dr.
Midway, Tx. 75852

NO ORAL ARGUMENT REQUESTED

( * )

Jackson vs State

Contents;

Cover Page ---------------------------------------------------------pg. *

Contents Page --------------------------------------------------- pg.i

Parties Page --------------------------------------------------- pg.ii

Oral Argument Page --------------------------------------------- pg.iii

Authorities Page ---------------------------------------------- pg.iv

Case History Page -------------------------------------------- pg.v

Statement of facts Page ------------------------------------ pg.vi


Issue; ONE ----------------------------------------------- pg.01
Did the Fifth Court of Appeals err by finding that the petitioner
was not entitled to a lesser included instruction on Theft ?

Issue; TWO -------------------------------------------------- pg.08
Did the Fifth Court of Appeals err by finding that the petitioner
was not entitled to an accomplice witness instruction ?

Appendix;
Motion to waive duplicate copies of PDR. ＝ Exhibit (a)

Prayer for Relief & Cert. of Service --------------------- pg.vii

Jackson vs State

Parties;

Petitioner-------------- Erik Jackson / pro se / TDC.1816262
                         Ferguson Unit - 12120 Savage Dr.
                         Midway, Tx. 75852


Trial Counsel ----------- Robert C. Bunger - Bar # 24006923
                         PO. Box 670959 - Dallas, Tx. 75367

      &

                         John Q. Galvan - Bar # 24010044
                         14001 Dallas Pkwy. Ste. 1200
                         Dallas, Tx. 75240


Appeal Counsel ---------- Catherine C. Bernhard - Bar # 02216575
                         PO. Box 2817 - Red Aok, Tx. 75154

State trial Counsel ----- Jason Fine - Bar # 24055477
                         Dallas Cnty. Dist. Att. Office
                         133 N. Riverfront Blvd. Lb. 19

      &

                         Leah Thomson - Bar # 24036177
                         Address - Same as above


Presiding Judge --------- Honorable Robert Burns
                         Crim. Dist. Ct. - Dallas Cnty, Tx.

(ii)

Jackson vs State

Oral Argument;

NO ORAL ARGUMENT REQUESTED.

Jackson vs State

Authorities;

Almanza v State, 686 sw 2d 157 (T.C.A. 1985) ---------- pg.06, 10

Arline v State. 721 sw 2d 351 (T.C.A. 1986) --------------- pg.10

Barris v State, 283 sw 3d 348 (T.C.A. 2009) --------------- pg.10

Bignall v State, 899 sw 2d 282 (Tx. App. Hous.14.1995 ------ pg.01

Bignall v State, 887 sw 2d 21 (T.C.A. 1994) -------------- pg.02

Campbell v State, 571 sw 2d 161 (T.C.A. 1978) ------------- pg.06

Casanova v State, 383 sw 3d 530 (T.C.A. 2012) ------------- pg.11

Freeman v State, 352 sw 3d 77 (Tx. App. Hous.14.2011) ----- pg.09

Freeman v State. 359 sw 3d 646 (T.C.A. 2012) -------------- pg.09

Goff v State, 931 sw 2d 537 (T.C.A. 1996) ---------------- pg.09

Griffen v State, 614 sw 2d 155 (T.C.A. 1981) ------------- pg.06

Guzman v State, 188 sw 3d 185 (T.C.A. 2006) -------------- pg.01

Hall v State, 225 sw 3d 524 (T.C.A. 2007) ---------------- pg.03

Hampton v State, 109 sw 3d 437 (T.C.A. 2003) ------------- pg.01

Hooper v State, 214 sw 3d 9 (T.C.A. 2007) ---------------- pg.01

Jackson v State, 160 sw 3d 568 (T.C.A. 2005) ------------- pg.02

Masterson v State, 155 sw 3d 167 (T.C.A. 2005) ----------- pg.07

Makeig v State, 802 sw 2d 59 (T.C.A. 1990) --------------- pg.02

Ngo v State, 175 sw 3d 738 (T.C.A. 2005) ----------------- pg.10

Oursbourn v State, 259 sw 3d 159 (T.C.A. 2008) ----------- pg.09

Ovalle v State, 13 sw 3d 774 (T.C.A. 2000) --------------- pg.06

Parr v State. 658 sw 2d 620 (T.C.A. 1983) ---------------- pg.06

Rousseau v State, 855 sw 2d 666 (T.C.A. 1992)------------- pg.01

Saunders v State, 840 sw 2d 390 (T.C.A. 1992) ------------ pg.01

Saunders v State, 913 sw 2d 564 (T.C.A. 1995) ----------- pg.07

Saunders v State, 817 sw 2d 688 (T.C.A. 1991) ----------- pg.10

Sharp v State, 707 sw 2d 611 (T.C.A. 1986) --------------- pg.04

Smith v State, 332 sw 3d 425 (T.C.A. 2011) --------------- pg.08

Solis v State, 792 sw 2d 95 (T.C.A. 1990) ---------------- pg.09

Travino v State, 100 sw 3d 232 (T.C.A. 2003) ------------- pg.06

Zamora v State, 411 sw 3d 504 (T.C.A. 2013) -------------- pg.08

Jackson vs State

Case History;

The petitioner, Erik Jackson, was tried and convicted on _____ for the offense of Aggravated Robbery and sentenced to FIFTEEN years in the Texas State Penitentiary. The petitioner filed a timely notice of Appeal. The petitioner's PDR. was formerly due on 1/31/2015. The petitioner requested an extension of time to file his PDR. which was granted. The petitioner's PDR. is now due on or before; 3/31/2015.

(v)

Jackson vs State

Statement of Facts

The 5th Court of Appeals opinion includes several renditions of the facts. Some of which include testimony of the petitioner, Erik Jackson; his friend Demone Butler, and the "alleged" victim, Ramiro Adame. However, each witness's testimony contradicts the others. The Court's opinion also contains "hearsay" statements that were allegedly made by the petitioner's girlfriend, Monique Adley, who incidently did not testify at the petitioner's trial. The petitioner adopts his appellate counsel's statement of facts in pertinent part as follows.

On the night of December 23rd. 2011, the petitioner engaged in a conspiracy to solicit for prostitution. Petitioner Jackson staged Monique in a Club parking lot and drove around the corner to wait for Monique to call him to pick her up upon completion. Somehow the pick up point became confused and the petitioner was unable to locate Monique. When he finally found Monique she was walking near some warehouses. She had an Iphone, Credit Cards, and approx. a Hundred Dollars in Cash that she didn't have when the petitioner had dropped her off earlier.

(vi)

Jackson vs State

Issue; ONE

Did the Fifth Court of Appeals err by finding that the petitioner was not entitled to a lesser included instruction on Theft ?

Standard of review;

An accused is 'entitled to an instruction' on every defensive issue raised by the evidence; regardless of whether such evidence is strong, weak, unimpeached or otherwise. See; Saunders v State 840 sw 2d 390, 391 (T.C.A. 1992). In order to determine whether an accused is entitled to a lesser included offense instruction a reviewing court applies the traditional two part "Rousseau" test. See; Rousseau v State, 855 sw 2d 666, 673 (T.C.A. 1992). First, the lesser offense must be included within the proof necessary to establish the 'greater' offense. See; Bignall v State, 887 sw 2d 21, 23 (T.C.A. 1994). Secondly, some evidence must exist within the record which would permit a reasonable juror to conclude that if the accused is guilty-- he is guilty only of a lesser offense. See; Guzman v State, 188 sw 3d 185, 187 (T.C.A. 2006). If there is more than a "scintilla" of evidence that raises the issue of a lesser included offense a charge instruction must be given. See; Hampton v State, 109 sw 3d 437, 441 (T.C.A. 2003).

Summery of Argument;

In the instant case, the Honorable Fifth Court of Appeals has applied an erroneous analysis by "re-weighing the evidence" which conflicts with a Court of Criminal Appeals prior decision. See; Hooper v State, 214 sw 3d 9, 12 (T.C.A. 2007).

(1)

Jackson vs State

Arguments & Authorities;

The petitioner argues that the Court of Criminal Appeals have previously determined that Theft can be a lesser included offense of Robbery and/or Aggravated Robbery. See; Bignall vs State, 887 sw 2d 21, 25 (T.C.A. 1994). The statutory elements of Aggravated Robbery include the commission of Robbery. Likewise the elements of Robbery include the commission of Theft. See; Tx. Penal Code §29.02 (Robbery); §29.03 (Agg. Robbery); §31.03 (Theft).

A trial court's decision on whether or not to submit a lesser included offense instruction is reviewed for abuse of discretion. See; Jackson vs State, 160 sw 3d 568, 575 (T.C.A. 2005). A trial court "abuses it's discretion" when it's decision is arbitrary or unreasonable or without reference to guiding rules or principles. See; Makeig v State, 802 sw 2d 59, 61 (T.C.A. 1990). In the case at bar, the Court of Appeals basically condoned the trial court's decision to deny the jury an opportunity to weigh the credibility of the witnesses testimony as well as the circumstantial evidence and any reasonable inferences thereof. A person commits Theft if he or she unlawfully appropriates property with the intentions of depriving the rightful owner of said property. The appropriation of property is an unlawful act if said property is stolen and the actor appropriates the property "knowing" that it was "stolen" by another. See; Tx. Penal Code §31.03 (a) & §31.03 (b).

(2)

Jackson vs State

In the instant case, the Court of Appeals declared that there was not so much as a "scintilla" of testimonial or circumstantial evidence, nor even the possibility that a single juror might have drawn a reasonable inference from the same that if the petitioner is guilty, he is guilty only of the lesser charge of Theft. See; Hall v State, 225 sw 3d 524, 536 (T.C.A. 2007). Indeed the Court of Appeals stated in no uncertain terms; "There is NO EVIDENCE in the record showing that Jackson 'knew' the IPhone was stolen...". See; COA. Opin. pg.7. The Court of Appeals further stated that; "[t]here was no way for him [petitioner] to 'know' the IPhone was stolen". See; COA. Opin. pg.8.

The petitioner "whole heartedly" disagrees with the 5th Court of Appeals findings for "several" reasons. First, the petitioner argues that the Court of Appeals utilized an "erroneous" standard of analysis. The Court of Criminal Appeals stated that the Court of Appeals should not determine whether an inference is or is not reasonable based on the combined/cumulative force of the evidence when viewed in the light most favorable to the conviction. See; Hooper v State, 214 sw 3d 9, 12 (T.C.A. 2007). In this case, the Court of Appeals clearly re-weighed the testimonys and decided to desregard that of Demone Butler who's testimonial evidence surely exceeds the "scintilla" necessary to warrant a Theft instruction. See; Hampton v State, 109 sw 3d 437, 441 (T.C.A. 2003).

(3)

On review of Demone Butler's version of the events the jurors were provided the choice to believe all, part or none of Butler's testimony. The petitioner argues that Butler's version is not so incredible under such circumstances that it would be unreasonable for a rational jury to have believed that Jackson knew the IPhone was stolen. It is the jurors perogative to believe all, part, or none of any witness's testimony. See; Sharp vs State, 707 sw 2d 611, 614 (T.C.A. 1986). Mr. Butler's testimony supports numerous reasonable inferences that could have been drawn regarding Theft, rather than Aggravated Robbery, had the instruction on Theft been given as requested. Butler testified that himself and petitioner and the petitioner's girlfriend, Monique Adley, had planned to go to a Club called Cowboys Red River. They arrived too late to get in. Butler testified that after being turned away from the Club, The petitioner said; Okay, "let's go make some money...". Butler testified that he took that to mean that the petitioner was going to send his girlfriend; Monique, out "Hustling" since that's what she usually did. See;RR.Vol.2-pg.215. Butler testified that he and the petitioner drove Monique to a nearby Club and dropped her off in the Club parking lot. Shortly thereafter, Monique texted the petitioner and advised him that she had been "picked up" by a guy in a silver Nissan. Butler testified that Monique had Credit Cards and the IPhone when the petitioner and himself picked her up. See; COA. Opin. pg.3.

(4)

The evidence of the petitioner's criminal intent to engage in a conspiracy to "aid or assist" in the commission of prostitution was clearly raised through the testimony of Butler in the instant case. The fact that Monique's original intent to commit one type of criminal offense (prostitution); resulted in the commission of a collateral Theft makes no difference at all. The petitioner is just as guilty of stealing the Credit Cards and IPhone as Monique under the law of parties. See; Tx. Pen. Code §7.02. A person is criminally responsible for the offense committed by another where acting with intent to promote the commission of an offense, he or she solicits, encourages, directs or aids the other person in the commission of that offense. See; Tx. Pen. Code §7.02 (a)(2). In the instant case, the jurors could have quite reasonably inferred that the petitioner knew the IPhone was stolen simply because his girlfriend returned with it under these particular circumstances. Further still, Officer Dillon testified that the petitioner was a YTN Nation gang member according to his "facebook" page. The YTN Nation gang was known for engaging in property offenses according to Officer Dillon who is the supervisor of the gang unit division of the Dallas Police Department. See; RR.Vol33-pg.139, 143, 148. If this is not enough upon which the jurors could have reasonably inferred that the petitioner knew the IPhone was stolen, consider the fact that when the petitioner realized that the officers were going to stop him, he grabbed the IPhone from Monique and gave it to Butler to hide in the rear armrest. See; RR.Vol.2-pg.227-28.

(5)

Jackson vs State

The Court of Criminal Appeals decided long ago that Theft can be a lesser included offense of Robbery under some circumstances. See; Campbell v State, 571 sw 2d 161 (T.C.A. 1978); Parr v State, 658 sw 2d 620, 626 (T.C.A. 1983); Griffen vs State, 614 sw 2d 155 159 (T.C.A. 1981). The petitioner contends that he has satisfied the first prong of the Rousseau test by showing that "Theft" is a lesser included offense of Robbery/Aggravated Robbery. Further, the petitioner contends that he has satisfied the second prong of the Rousseau test by showing that the record supports more than a "scintilla" of evidence; albeit possibly circumstantial, which is all it takes to warrant an inclusion of a lesser included offense instruction on Theft. See; Rousseau, Supra.

Harm & Prejudice;

The trial court's refusal to give the lesser included offense instruction on Theft caused SOME HARM to the defendant. Pursuant to Almanza v State, 686 sw 2d 157, 171 (T.C.A. 1984), when a jury charge contains error, and that error has been properly preserved by an objection, or requested instruction; a reversal is required if the error is "calculated to injure the rights" of a defendant; meaning, there must be "Some Harm". See; TEX. CCP Art. §36.19; Travino v State, 100 sw 3d 232, 242 (T.C.A. 2003); Almanza @ 171. The degree of harm must be considered in light of the entire jury charge, state of the evidence, including contested issues and the weight of probative evidence, arguments of counsel, and any other relevant information. See; Ovalle v State, 13 sw 3d 774 (T.C.A. 2000).

Harm exists where the penalty imposed for the charged offense "exceed" the "potential penalty" for the lesser included offense. See; Bignall vs State, 899 sw 2d 282, 284 (Tx. App. Houston, 14th Dist. 1995, no pet). Harm also exists when the failure to submit a lesser included offense instruction leaves the jury with a sole option of either convicting the defendant of the greater offense, or "acquitting" him altogether even though he is obviously guilty of a lesser offense. See; Saunders vs State, 913 sw 2d 564, 571 (T.C.A. 1995).

In the instant case, the "actuallvalue" of the IPhone was not conclusively established. Theft of property valued at less than $1,500.oo is a misdemeanor. The petitioner was given (15) years; which is significantly more than it would have been had the trial court included the Theft instruction requested. There were "No" intervening lesser included offensesdthat the jury rejected which would allowuthe court to conclude that the jurors were not put on the "horns of a delemma" of whether to convict of the only option available or acquit him altogether. See; Masterson vs State, 155 sw 3d 167, 172 (T.C.A. 2005); Beck v Alabama, 447 US. 625, 634-36 (1980). The failure to provide a lesser included instruction on Theft caused "Some Harm" under Almanza, thus requiring a reversal and remand for a new trial.

(7)

Jackson vs State

Issue; TWO

Did the Fifth Court of Appeals err by finding that the petitioner was not entitled to an accomplice witness instruction ?

Standard of review;

Where the evidence shows that a witness is an accomplice as a matter of law, the trial court must instruct the jury accordingly; A witness who is indicted for the "same" offense, or even a lesser included offense as the defendant is an accomplice as a matter of law;  See; Smith v State, 332 sw 3d 425, 439 (T.C.A. 2011).

Summery of Argument;

In the instant case, the Honorable Fifth Court of Appeals has erred in finding that the trial court had "no duty to provide an accomplice-witness instruction sua sponte.  See; Zamora vs State, 411 sw 3d 504, 510 (T.C.A. 2013)(Id. @ 513).

Aurgument & Authorities;

When Demone Butler testified; for the prosecution no less, he was under indictment for the "same" aggravated robbery which Erik Johnson was charged with.  See; RR.Vol.2-pg.203-04 Nevertheless. no accomplice witness instruction was either requested by defense nor provided sua sponte by the trial court.  The petitioneng finds it somewhat premature to argue ineffective assistance of counsel; but instead argues that the trial court had a Constitutional duty to include the accomplice witness instruction "sua sponte".  See; Zamora, supra. @ 513.

(8)

Jackson vs State

If a prosecution witness is an accomplice as a matter of law, the trial court has a duty to instruct the jury that a conviction cannot be had based on the testimony of that witness unless it is "corroborated by other evidence tending to connect the defendant" with the charged offense. See; Blake v State, 871 sw 2d 451, 452 (T.C.A. 1998). A witness that has been indicted for the same, or lesser included offense such as Demone Butler is an accomplice as a matter of law. See; Goff v State, 931 sw 2d 537 (T.C.A. 1996). The accomplice witness instruction is part of the "law applicable to the case", thus the trial court is "obligated" to instruct the jurors sua sponta. Failure to do so is error, regardless whether the defense requests the instruction. See; Solis v State, 792 sw 2d 95, 98 (T.C.A. 1990).

In the instant case, it appears the trial court's decision to withhold the instruction was based on Mr. Butler's testimony that he took no part in the alleged robbery. See; RR.Vol.3-pg.98. It is logical that since Butler was indicted for the same offense as the petitioner, there was a motive to "lie" in order to shift the blame, and avoid punishment. A failure to include an accomplice witness instruction was error, especially considering such charge is "implicitly required by statute anytime the accomplice witness issue is raised by the evidence". See; Freeman vs State, 352 sw 3d 77, 82 (Tx. App. 2011 pet. ref'd)(359 sw 3d 646 (T.C.A. 2012), citing; Oursbourn vs State, 259 sw 3d 159, 180 (T.C.A. 2008).

(9)

Jackson vs State

Harm & Prejudice;

Having demonstrated that the jury charge was deficient due to the trial court's failure to sua sponte submit accomplice witness instructions, the next step is to address the "harm sustained" by the petitioner due to the trial court's error. See; Ngo vs State 175 sw 3d 738, 743 (T.C.A. 2005); Barris vs State, 283 sw 3d 348 350 (T.C.A. 2009); Almanza vs State. 686 sw 2d 157 (T.C.A. 1985). In the instant case, the defense did not challenge or request the accomplice "as a matter of law" instruction. Nor did he "object" to it's omission. When charge error is not preserved a defendant must show egregious harm. See; Arline v State, 721 sw 2d 351,353 (T.C.A. 1986)(Id. @ 351-52). The "actual degree of harm" must be evaluated in light of the entire charge; state of evidence, which include contested issues, weight of probative evidence, arguments of counsel and any other relevant information revealed by record. See; Almanza @ 171; & Tx. CCP Art. §36.19.

The failure to receive a fair trial is shown where a rational juror could have found the State's case "less persuasive" if they had been told that the accomplice's testimony may not be accepted for a basis of conviction without some corroborating testimony or evidence. See; Saunders v State. 817 sw 2d 688-93 (T.C.A.1991). In assessing harm the reviewing court must look to the "strength" of the corroborating evidence.

(10)

When the evidence is exceedingly weak as in the instant case, egregious harm is shown. See; Casanova vs State, 383 sw 3d 530, 533 (T.C.A. 2012)(Id. @ 539). The alleged victim testified that he was "unable to identify" his attackers. See; RR.Vol.2-pg.189. The petitioner's connection to the offense comes largely from his possession of the stolen IPhone. Butler testified; Monique Adley had the IPhone when she returned to the vehicle with Mr. Jackson. See; COA. Opin. pg.3. Demone Butler was the "only witness" that even "remotely" implicated a possibility of Jackson's presence at the scene of the crime. However, even at that rate, one can only speculate, since Butler testified that he "did not see where" the petitioner went when he exited the vehicle. See; COA. Opin pg.3. In sum, without Butler's "circumstantial evidence" testimony, the State's case against Jackson would have been "significantly less" persuasive. The weakness of the State's case was quite apparent. The petitioner was given a Fifteen year sentence for a crime that carries 5-99 to Life. It is clear that the jurors were "looking" for a lesser included offense option. The trial Court's failure to sua sponte instruct the jury that Butler's testimony needed to be corroborated egregiously harmed Jackson, requiring a reversal.

(11)

**** APPENDIX ****

Prayer for relief;

Wherefore, premises considered; there being reversible error[s] in the trial of this case, the petitioner prays this Court will reverse this judgment and remand for a new trial, or any relief this court finds fitting and proper under the circumstances, be granted.

Signature; Erik Jackson

Signature; *Erik Jackson*

Certificate of Service;

I, ERIK-JACKSON, do hereby certify that the above is true and correct. The aforegoing petition for discretionary review is being placed in the US. prison mail box on March 24, 2015 and is addressed to the Court of Criminal Appeals at Austin; 12308 Capital Station, Austin, Tx. 78711.

Signature; Erik Jackson

Signature; *Erik Jackson*

TDCJ. No. 1816262

Ferguson Unit
12120 Savage Dr.
Midway, Tx. 75852

(vii)

Jackson vs State

| | | |
|---|---|---|
| Exparte | § | In the 1st. judicial |
| Erik Jackson | § | district court of |
| | § | Dallas,County, Tx. |
| | § | |

## Motion to waive copies of the
## Petition for Discretionary Review

Comes Now. Erik Jackson, pro se, petitioner, in the above styled and numdered cause, and requests this Honorable Court "WAIVE" any additional copies of this Petition for Discretionary Review, and would show the following in support thereof;

I.

The petitioner is unable to access a copy machine on this unit for the purpose of copying personal legal work.

Signature; *Erik Jackson*

Erik Jackson

Exhibit (a)



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

No. 05-12-01413-CR

---

**ERIK JAMAL JACKSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F-1163319-H**

---

# MEMORANDUM OPINION
Before Justices FitzGerald, Fillmore, and Stoddart
Opinion by Justice Stoddart

A jury convicted Erik Jamal Jackson of aggravated robbery and sentenced him to 15 years' confinement. In two issues, Jackson argues the trial court erred by failing to instruct the jury on the lesser-included offense of theft and by failing to instruct the jury on the accomplice witness rule. We affirm the trial court's judgment.

The State alleged Jackson intentionally and knowingly, while in the course of committing theft of property and with the intent to obtain or maintain control of the property, threatened and placed the victim in fear of imminent bodily injury and death, and Jackson used and exhibited a firearm. At trial, the victim of the crime was the State's first witness. Ramiro Adame testified that on December 23, 2011, he left a bar about 1:00 a.m. He saw a "girl" in the parking lot and, because it was cold outside, Adame asked the girl if he could help her. The girl told Adame she was waiting for a friend, but accepted Adame's offer to wait in his car until her friend arrived.

Adame testified that once the girl was in the car, she was texting with someone on her phone. Adame stated "she kept saying that she had a friend coming by or close by, and he's going to pick me up." After about 10 minutes, her friend still had not arrived. The girl asked Adame for money. When he said he was not going to give money to her, she offered to have sex with Adame for money; he declined this offer.

A gas station was down the street from the bar. Adame wanted to go to the gas station and get something to drink and the girl rode in the car with him. During this time, the girl continued texting on her phone.

When they returned to the car after going into the gas station, Adame offered to take the girl back to the bar. Instead, as they drove back, she instructed him to turn on to a side street and said her friends would pick her up there. At some point, the girl told Adame to park. He described the area where he parked: "There's a small convenience store, kind of like a gas station, and there's a warehouse there and there's a parking lot. Eventually there's a lot, a parking lot, so she told me to park right behind there or right just kind of like behind the gas station at the warehouse, and I parked right there where she told me to." No other cars were in the parking lot.

As soon as Adame parked, someone opened his car door. Adame testified: "So they pull me out and say get out of the car. I kind of tried to turn around, and I didn't have a chance because they told me to don't [sic] look at them, and they had a gun pointed at me, so they told me to don't [sic] look at them so I just followed their directions." Adame thought there was more than one attacker. The people who took him out of his car, took everything he had in his pockets, including his wallet and iPhone. They also took some items from the car.

Adame testified the girl was not robbed and did not seem scared; she left with the people who robbed him. Adame stated he did not see his attackers well and would not be able to identify them.

Demone Butler testified as the State's second witness. He was charged with aggravated robbery along with Jackson and Monique Adley, the "girl" who was in the car with Adame. Adley was Jackson's girlfriend. Butler testified he attempted to go to a club with Jackson, Adley, Jackson's brother, and some other people on December 23, 2011, but they were not admitted because they were underage. Butler and Jackson's brother each had a gun.

Butler testified that after they were turned away from the club, Jackson said "he's about to go make some money." Butler believed this meant Jackson planned to have Adley prostitute herself. They left the club and Jackson drove his car (carrying Butler and Adley) to a parking lot where they dropped off Adley.

Butler testified he and Jackson drove away after dropping off Adley and went to a vacant "road next to some office buildings." Jackson said the location was where they would pick up Adley. When they parked near the office buildings, a car carrying Jackson's brother and his friends parked alongside them. Jackson, his brother, and his brother's friends all got out of their cars. Butler testified that when Jackson was exiting the car, he asked Butler for Butler's gun. Butler refused to give it to him.

Butler stayed in Jackson's car and the other men retreated into the darkness. He did not see where they went or what happened, he did not see a robbery occur, he did not see whether anyone had a gun. After a couple of minutes, the men and Adley returned to the cars and the cars drove away. When Jackson and Adley got back into the car, Adley was "going through some cards," credit cards. They also had an iPhone with them. No one talked about what happened.

—3—

Jackson drove to a restaurant and then a gas station. Butler testified that at the gas station, a "cop car started pulling up, and one of the cops gets out, and he was like we tracked her right here or whatever and I think he's like that. And then [Jackson] grabbed the phone from her, and he hands it to me and he told me to put it up." Butler testified he put the phone in the armrest in the back seat. The police arrested Jackson, Butler, and Adley.

Officer Donald Ritchie was a Dallas police officer on December 23, 2011. On that night, he received a call at 2:28 a.m. about a robbery. He met Adame at a gas station. Adame told Ritchie he had been robbed by several black males and a black female; they took his money, wallet, phone, and property. When Ritchie learned Adame's phone was an iPhone, Ritchie used his own iPhone to track it. Ritchie was "able to see that the phone was still active and moving at that time." Ritchie began driving and following the iPhone; he followed the iPhone to a gas station. The iPhone signal was stationary at the gas station for a while. When the signal moved again, Richie was able to determine which car the phone was in. Ritchie relayed the vehicle's information to another officer who stopped the car. The officer found the iPhone, several other cell phones, a gun, a Halloween mask, and cash in the car. He did not find a wallet or credit cards. Jackson, Butler, and Adley were in the car. The iPhone was located in the backseat of the car where Butler had been sitting.

Jackson testified in his defense. Jackson stated he and Adley went to a club that was in close proximity to the club where Adame met Adley. Butler was with them. Jackson and Adley had an argument. After they were unable to get into the club, Jackson testified he told Adley "I wasn't going to waste no more gas or time on taking her nowhere else." Adley got out of the car and began pacing back and forth in front of the car. Adley then retrieved her purse from the car and walked away. Jackson said he did not leave the parking lot because he was expecting his brother to come to the club. Ten to fifteen minutes later, his brother and two friends arrived.

—4—

Jackson sent Adley a text that said "go to the spot?" Thirty seconds later, Adley replied "go to the spot." Jackson testified a restaurant was "the spot."

Jackson testified he and his brother drove their cars to a nearby restaurant. Jackson looked inside the restaurant to see if Adley was there. When he discovered she was not, Jackson called her on her phone. Adley told him that she was at a gas station; a guy had seen her walking and offered to give her a ride. Adley told Jackson she would ask the man to take her to the restaurant. The phone hung up and Adley did not arrive at the restaurant. Jackson called Adley again, but she did not answer. Jackson became concerned because she was not answering her phone, her phone had hung up while they were talking, and Adley was in the car with a man. Jackson stated he decided to go to the gas station to find Adley; his brother was going to drive his own car to the gas station.

As they drove, Jackson noticed his brother was in the wrong lane. His brother was following a car matching the description of Adame's car. Adame turned on a side street and Jackson's brother followed. Due to traffic lights and the lane Jackson was in, he was delayed in following Adame and his brother. When Jackson turned on the side street, he did not see Adame's or his brother's car. Jackson began driving through the warehouses and "I come out of the last one and I see Ms. Adley coming up the street, on the sidewalk." Adley got into Jackson's car. Jackson testified: "She had a puzzled look on her face, and she got in the car. . . I kind of started yelling at her because I'm not understanding why you're over here anyways, what's going on or why are you even over here."

Jackson said Adley told him the following story about encountering Adame:

> That's when she tells me about how she got in the car with Adame. She said that she -- that Adame had seen her walking west of the club, Club Kendall's, and he had stopped and offered her a ride. She told him no. He offered again. She told him no, that she had a ride, she's good, she doesn't need a ride from him. So he tried to bribe her to get in the car, it was cold outside. So she finally was like oh, okay, so she got in the car. From there Adame said well, let me go to the store

first, so he made a stop at the store. That's when I found out that that's -- the RaceTrac is where they was at. That's how I found out that they got to the RaceTrac.

After Jackson picked up Adley, he contacted his brother and they agreed to meet at a gas station. When Jackson arrived at the station, his brother was already there. He testified his brother walked to his car and "[t]hat's when he handed me the phone." It was an iPhone. Jackson stated he sat down in his car with the iPhone; Jackson did not know how the iPhone came to be in the backseat of the car where the police found it.

Jackson denied he was present when Adame was robbed. He did not see Adame's car parked. Jackson stated Butler also did not participate in the robbery. He stated the money in Adley's purse was from Adame because Adame paid Adley for sex. Although Jackson stated several times he believed no robbery occurred, in a separate proceeding Adley pleaded guilty to aggravated robbery.

In his first issue, Jackson asserts theft is a lesser-included offense of aggravated robbery and the trial court erred by failing to instruct the jury on theft. In his brief, Jackson argues the basis for his request for the theft instruction is Butler's testimony that when the police approached Jackson's car, Jackson gave the phone to Butler to put in the armrest. Jackson argues this action is some evidence Jackson knew the phone was stolen.

The trial court's decision to submit or deny a lesser included offense instruction is reviewed for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). We apply a two-pronged test to determine if the trial court should have given a jury charge on a lesser-included offense. *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007). We first determine if the proof necessary to establish the charged offense includes the lesser offense. *Id.* If it does, we then review the evidence to determine that if appellant is guilty, he is guilty only of the lesser offense. *Id.* at 536.

–6–

The second step is a question of fact and is based on the evidence presented at trial. *Cavazos v. State*, 382 S.W.3d 377, 383 (Tex. Crim. App. 2012). This step requires the reviewing court to determine whether "there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Rice v. State*, 333 S.W.3d 140, 145 (Tex. Crim. App. 2011). This evidence must show the lesser included offense is a "valid, rational alternative to the charged offense." *Id.* Moreover, it "is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997).

Even if we were to conclude that theft is a lesser-included offense of aggravated robbery in this case, we cannot conclude that if Jackson is guilty, he is only guilty of theft. A person commits the offense of theft if he unlawfully appropriates property with the intent to deprive the owner of the property. TEX. PENAL CODE § 31.03(a). An appropriation of property is unlawful if it is without the owner's effective consent or if the property is stolen and the actor appropriates the property knowing it was stolen by another. *Id.* § 31.03(b). In his brief, Jackson argues the latter: he took possession of the iPhone knowing it was stolen.

There is no evidence in the record showing that Jackson knew the iPhone was stolen, but did not participate in the robbery. Jackson denied being involved in the robbery, said he did not see a robbery occur, and testified he did not believe a robbery occurred. He did acknowledge taking possession of Adame's iPhone and now argues there was some evidence he knew the iPhone was stolen even though he did not participate in the robbery. The record does not support this conclusion. Based on the evidence presented at trial, the only means by which Jackson would have known Adame's iPhone was stolen when he took possession of it—whether he took

–7–

possession at the scene of the crime or at the gas station when his brother handed it to him—is if Jackson participated in the robbery. If Jackson did not participate in the robbery and did not have knowledge of a robbery, as he maintained in his testimony, then there was no way for him to know the iPhone was stolen. Therefore, Jackson could not have been only guilty of theft and the trial court did not abuse its discretion by denying Jackson's request for a lesser-included-offense instruction. We overrule Jackson's first issue.

In his second issue, Jackson argues that, with respect to Butler's testimony, the trial court erred by failing to instruct the jury on the accomplice witness rule. A "conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed." TEX. CODE. CRIM. PROC. ANN. art. 38.14; *see also Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (accomplice-witness instruction informs jury it cannot use accomplice-witness testimony unless there also exists some non-accomplice evidence connecting defendant to the offense).

Jackson did not object at trial to the trial court's failure to include an accomplice-witness instruction in the jury charge. Therefore, we reverse the trial court only if the record demonstrates that the error resulted in egregious harm. *Casanova v. State*, 383 S.W.3d 530, 533 (Tex. Crim. App. 2012). The court of criminal appeals has articulated the standard for determining egregious harm under *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g)) in the context of the failure to submit an accomplice-witness instruction. *Id.* In *Casanova*, the court stated that if "the omission is not made known to the trial judge in time to correct his error, appellate review must inquire whether the jurors would have found the corroborating evidence so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Id.* (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)); *see also Herron*, 86 S.W.3d at 632 (under egregious harm

–8–

standard, omission of accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.").

Whether the trial court's error in failing to submit an accomplice-witness instruction is harmful is "a function of the strength of the corroborating evidence." *Casanova*, 383 S.W.3d at 539. The *Casanova* court stated:

> As the strength of the corroborating evidence increases, however, a reviewing court may no longer be able to declare that the lack of an accomplice-witness instruction resulted in egregious harm . . . And as the corroborating evidence gains in strength to the point that it becomes implausible that a jury would fail to find that it tends to connect the accused to the commission of the charged offense, then a reviewing court may safely conclude that the only resultant harm is purely theoretical and that there is no occasion to reverse the conviction, even in the face of an objection, since the jury would almost certainly have found that the accomplice witness's testimony was corroborated had it been properly instructed that it must do so in order to convict.

*Id.* at 539-40 (internal citations omitted)

The State showed Jackson's girlfriend, Adley, accepted Adame's offer to stay in his car while she waited for some friends. While she was in the car, she constantly was texting someone. At Adley's direction, Adame parked his car in a vacant parking lot. As soon as Adame parked, he was robbed at gunpoint; the people who robbed him took his iPhone and wallet. However, Adley was not robbed, did not seem scared, and left with the people who robbed Adame. Adley subsequently pleaded guilty to aggravated robbery.

Jackson admitted to being in the vicinity where the robbery occurred at the time the robbery occurred. He admitted Adley had been in his car and she got out of his car in the same geographic vicinity. Jackson admitted that before the robbery he exchanged text messages with Adley about "go[ing] to the spot." He also admitted to being in possession of the stolen iPhone—a fact confirmed by the police officer's testimony.

The non-accomplice testimony in this case is not so unconvincing as to render the State's case clearly and significantly less persuasive. *See id.* at 533; *Herron*, 86 S.W.3d at 632. Rather, the corroborating evidence and the inferences to be drawn from the evidence more than sufficiently tend to connect Jackson to the robbery. It is implausible that the jury would have failed to find the corroborating evidence connected Jackson to the offense. Had it been properly instructed, the jury almost certainly would have found Butler's testimony was corroborated. *See Casanova*, 383 S.W.3d at 539-40. Therefore, we conclude Jackson did not suffer egregious harm from the trial court's failure to include an accomplice-witness instruction in the jury charge. We overrule Jackson's second issue.

We affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
121413F.U05

—10—



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ERIK JAMAL JACKSON, Appellant

No. 05-12-01413-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas
Trial Court Cause No. F-1163319-H.
Opinion delivered by Justice Stoddart.
Justices FitzGerald and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 31st day of December, 2014.